TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERIN S. AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
      1100/1300 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-6527/3819
      Facsimile: (213) 894-6269/0141
      E-mail:    Scott.Paetty@usdoj.gov
                 Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
      1400 New York Avenue NW, 3rd Floor
      Washington, DC 20530
      Telephone: (202) 320-0539
      Facsimile: (202) 514-0152
      E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-579(A)-SVW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT ARMAN HAYRAPETYAN |
| v. | |
| ARMAN HAYRAPETYAN, | |
| Defendant. | |

    1.   This constitutes the plea agreement between ARMAN

HAYRAPETYAN ("defendant") and the United States Attorney's Office for

the Central District of California and the United States Department

of Justice, Criminal Division, Fraud Section (collectively referred

to herein as the "United States") in the above-captioned case.  This agreement is limited to the United States and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to count twenty-six of the first superseding indictment in <u>United States v. Richard Ayvazyan et al.</u>, CR No. 20-579(A), which charges defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).

b.   Agree that all court appearances, except his sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 20-097 or another order, rule, or statute.  Defendant understands that, under the United States Constitution, the United States Code, and the Federal Rules of Criminal Procedure (including Rules 11 and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely.  Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

i.   Defendant consents under Federal Rules of Criminal Procedure 5(f) and 10(c) and Section 15002(b) of the CARES

Act to proceed with his initial appearance and arraignment by VTC or telephone, if VTC is not reasonably available.

        ii.   Defendant consents under Section 15002(b) of the CARES Act to proceed with his waiver of indictment, under Federal Rule of Criminal Procedure 7(b), by VTC or telephone, if VTC is not reasonably available.

        iii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

        iv.   Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing regarding alleged violations of the conditions of pretrial release by VTC or telephone, if VTC is not reasonably available.

        c.   Not contest facts agreed to in this agreement.

        d.   Abide by all agreements regarding sentencing contained in this agreement.

        e.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        f.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        g.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        h.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3

i.   Ability to pay shall be assessed based on the Financial Disclosure Statement, referenced below, and all other relevant information relating to ability to pay.

j.   Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

k.   Complete the Financial Disclosure Statement on a form provided by the United States and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the United States by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the United States Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

l.   Authorize the United States to obtain a credit report upon returning a signed copy of this plea agreement.

m.   Consent to the United States inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of the illegal activity to which defendant is pleading guilty (collectively, the "Forfeitable Assets").

4

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.    Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.    To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.    To fill out and deliver to the United States a completed financial statement listing defendant's assets on a form provided by the United States.

1        i.   That forfeiture of Forfeitable Assets shall not be

2   counted toward satisfaction of any special assessment, fine,

3   restitution, costs, or other penalty the Court may impose.

4        4.   Defendant further agrees to cooperate fully with the United

5   States, the Federal Bureau of Investigation ("FBI"), the Internal

6   Revenue Service-Criminal Investigation ("IRS-CI"), the Small Business

7   Administration-Office of Inspector General ("SBA-OIG"), and, as

8   directed by the United States, any other federal, state, local, or

9   foreign prosecuting, enforcement, administrative, or regulatory

10  authority.  This cooperation requires defendant to:

11       a.   Respond truthfully and completely to all questions

12  that may be put to defendant, whether in interviews, before a grand

13  jury, or at any trial or other court proceeding.

14       b.   Attend all meetings, grand jury sessions, trials or

15  other proceedings at which defendant's presence is requested by the

16  United States or compelled by subpoena or court order.

17       c.   Produce voluntarily all documents, records, or other

18  tangible evidence relating to matters about which the United States,

19  or its designee, inquires.

20       5.   For purposes of this agreement: (1) "Cooperation

21  Information" shall mean any statements made, or documents, records,

22  tangible evidence, or other information provided, by defendant

23  pursuant to defendant's cooperation under this agreement or pursuant

24  to the letter agreement previously entered into by the parties dated

25  May 6, 2021 (the "Letter Agreement"); and (2) "Plea Information"

26  shall mean any statements made by defendant, under oath, at the

27  guilty plea hearing and the agreed to factual basis statement in this

28  agreement.

<u>THE UNITED STATES' OBLIGATIONS</u>

6.   The United States agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the superseding indictment and move to dismiss the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 21 or higher and provided that the Court does not depart downward in offense level or criminal history category.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

7.   The United States further agrees:

a. Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the United States, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the United States, any Cooperation Information. Defendant agrees, however, that the United States may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b. Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed. Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.   If the United States determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

                    DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

8.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the United States or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty plea if the United States does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the United States makes such a motion and the Court does not grant it or if the Court grants such a United States motion but elects to sentence above the reduced range.

d.   At this time the United States makes no agreement or representation as to whether any cooperation that defendant has

9

provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the United States.

e.   The United States' determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSE</u>

9.   Defendant understands that for defendant to be guilty of the crime charged in count twenty-six of the superseding indictment in <u>United States v. Richard Ayvazyan et al.</u>, CR No. 20-579(A), which charges defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), the following must be true: (1) defendant agreed with one or more co-conspirators to knowingly conduct a financial transaction involving property that represented the proceeds of wire fraud and/or bank fraud; (2) defendant knew that the property represented the proceeds of some form of unlawful activity; and (3) defendant knew that the transaction was designed in whole or in part conceal or disguise the nature, location, source, ownership, or control of the proceeds of such unlawful activity (<u>i.e.</u>, § 1956(a)(1)(B)(i)).

<u>PENALTIES AND RESTITUTION</u>

10.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(h), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross

10

gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges. The parties currently believe that there is no restitution owed in this caset, but recognize and agree that a restitution amount may be determined based on facts that come to the attention of the parties prior to sentencing.

12. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration

status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States

FACTUAL BASIS

15.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the United States agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in or around March 2020 and continuing at least until in or around October 2020, defendant, together with co-conspirators known and unknown, including Manuk Grigoryan, and others (collectively, "co-conspirators"), knowingly engaged in a money laundering conspiracy, the object of which was to transfer the illicit proceeds of a scheme in order to conceal the nature, source, location, ownership and control of those proceeds.  These proceeds constituted fraudulently obtained disaster relief funds under the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan Program ("EIDL"), two federal relief programs that were created through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, a federal law that was enacted in or about March 2020 and that was designed to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic.  As a result of the money laundering conspiracy, such proceeds were

distributed among the co-conspirators for their own personal benefit, including the purchase of luxury goods, services, and real estate, rather than being used for permissible business expenditures under the provisions of the PPP and EIDL programs.

Defendant was recruited by codefendant Grigoryan to join the money laundering conspiracy. In furtherance of the conspiracy and for the purpose of carrying out its object, at the direction of Grigoryan and others, defendant opened various business checking accounts at a federally-insured financial institution with account names that included Arman Hayrapetyan DBA S. Construction, Arman Hayrapetyan DBA H. Construction, and Arman Hayrapetyan DBA S. Dental, as set forth in the below chart (the "DBA bank accounts"), for the purpose of receiving deposits of criminal proceeds, which included the fraudulently obtained PPP and EIDL loans listed below. Defendant opened these accounts based on Grigoryan's representation that defendant would be a partner in the businesses listed in the account names; in fact, defendant was never legally associated with any of those businesses.

| Type | Business Applicant | Amount | Deposit Date | Deposit Bank Acct | Acct# |
|------|--------------------|--------|--------------|-------------------|-------|
| PPP | S. Construction | $182,637 | 5/1/2020 | CHASE Arman Hayrapetyan ("AH") DBA S. Construction Co. | XXX9906 |
| PPP | S. Construction | $113,750 | 5/1/2020 | CHASE AH DBA S. Construction Co. | XXX9906 |
| | *Subtotal* | $296,387 | | | |

| Type | Business Applicant | Amount | Deposit Date | Deposit Bank Acct | Acct# |
|------|--------------------|--------|--------------|-------------------|-------|
| PPP | AH DBA H. Construction | $112,500 | 5/1/2020 | CHASE AH DBA H. Construction Co. | XXX1511 |
| PPP | H. Construction | $130,000 | 5/5/2020 | CHASE AH DBA H. Construction Co. | XXX1511 |

14

| PPP | H. Construction | $130,000 | 5/6/2020 | CHASE AH DBA H. Construction Co. | XXX1511 |
| PPP | H. Construction | $130,000 | 5/1/2020 | CHASE AH DBA H. Construction Co. | XXX1511 |
| | *Subtotal* | $502,500 | | | |

| Type | Business Applicant | Amount | Deposit Date | Deposit Bank Acct | Acct# |
|------|--------------------|--------|--------------|-------------------|-------|
| PPP | S. S. Dental DDS Inc | $182,500 | 5/5/2020 | CHASE AH DBA S. Dental | XXX5355 |
| PPP | S. S. Dental DDS Inc | $182,500 | 5/4/2020 | CHASE AH DBA S. Dental | XXX5355 |
| EIDL | S. S. Dental DDS Inc | $150,000 | 6/25/2020 | CHASE AH DBA S. Dental | XXX5355 |
| EIDL Grant | S. S. Dental DDS Inc | $10,000 | 6/23/2020 | CHASE AH DBA S. Dental | XXX5355 |
| | *Subtotal* | $525,000 | | | |

**Total:**     $ 1,323,887

At the direction of codefendant Grigoryan, who supervised and managed defendant, defendant then used the DBA bank accounts to launder the proceeds from fraudulently obtained PPP and EIDL loans, which defendant knew were the proceeds of illegal activity undertaken by his co-conspirators, including Grigoryan, R. Ayvazyan, Terabelian, A. Ayvazyan, T. Dadyan, Paronyan, and V. Dadyan, between and among his co-conspirators.  For example, on or about May 4, 2020, defendant, together with other coconspirators including Grigoryan, caused a check for approximately $50,000, drawn on the AH DBA S. Construction Co. bank account and comprised in substantial part of the fraudulent PPP loan proceeds for S. Construction and H. Construction, to be written to the order of Fiber One Media (the "Fiber One Media check").  The Fiber One Media check was endorsed on the back with the name of codefendant Terabelian's alias, "Viktoria Kauichko."

Furthermore, defendant, together with other coconspirators including Grigoryan, caused smaller payments to be made out of each of the above-referenced DBA bank accounts to some of the other codefendants.  To facilitate these transfers, defendant provided his login and password information for the DBA bank accounts to codefendant Grigoryan to give Grigoryan access to the accounts.  For instance, after the deposit of fraudulent PPP loan proceeds into the AH DBA S. Construction Co. account, defendant and codefendant Grigoryan caused the transfer of $500 to "Iuliia Zhadko," the alias of codefendant R. Ayvazyan.  Similarly, after the deposit of the proceeds from two of the PPP loans into the AH DBA H. Construction account, defendant and codefendant Grigoryan caused the transfer of two separate payments ($600 and $400) to codefendant Terabelian's alias, "Viktoria Kauichko".

Defendant agrees that he received approximately five percent of the fraudulent proceeds as payment for his agreement to launder the funds.  Defendant agrees that deposits of fraudulently obtained PPP and EIDL loan proceeds into bank accounts that defendant controlled totaled approximately $1,323,887.

<u>SENTENCING FACTORS</u>

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the

16

Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

17.   Defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 22 | U.S.S.G. § 2S1.1(a)(2), U.S.S.G. §§ 2B1.1(b)(1)(H) |
| Specific Offense Characteristics | | |
| Conviction under § 1956 | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |

Defendant and the United States reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. §§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be

represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

      d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

      e.   The right to confront and cross-examine witnesses against defendant.

      f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

      g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

      h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

18

1

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

2      22.   Defendant gives up the right to appeal all of the

3  following: (a) the procedures and calculations used to determine and

4  impose any portion of the sentence; (b) the term of imprisonment

5  imposed by the Court, provided it is no more than the high-end of the

6  Sentencing Guidelines range calculated by the Court; (c) the fine

7  imposed by the Court, provided it is within the statutory maximum;

8  (d) to the extent permitted by law, the constitutionality or legality

9  of defendant's sentence, provided it is within the statutory maximum;

10 (e) the amount and terms of any restitution order; (f) the term of

11 probation or supervised release imposed by the Court, provided it is

12 within the statutory maximum; and (g) any of the following conditions

13 of probation or supervised release imposed by the Court: the

14 conditions set forth in Second Amended General Order 20-04 of this

15 Court; the drug testing conditions mandated by 18 U.S.C.

16 §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions

17 authorized by 18 U.S.C. § 3563(b)(7).

18     23.   Defendant also gives up any right to bring a post-

19 conviction collateral attack on the conviction or sentence, including

20 any order of restitution, except a post-conviction collateral attack

21 based on a claim of ineffective assistance of counsel, a claim of

22 newly discovered evidence, or an explicitly retroactive change in the

23 applicable Sentencing Guidelines, sentencing statutes, or statutes of

24 conviction.  Defendant understands that this waiver includes, but is

25 not limited to, arguments that the statute to which defendant is

26 pleading guilty is unconstitutional, and any and all claims that the

27 statement of facts provided herein is insufficient to support

28 defendant's plea of guilty.

24.   The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than the low-end of the Sentencing Guidelines range calculated by the Court the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal the amount of any restitution ordered.

RESULT OF WITHDRAWAL OF GUILTY PLEA

25.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible; and (c) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute

of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

26.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

27.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

28.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United

States declares this agreement breached, and the Court finds such a breach to have occurred, then:

a. If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b. The United States will be relieved of all its obligations under this agreement; in particular, the United States: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the United States would otherwise have been obligated to dismiss; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c. The United States will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d. In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and

defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

29. Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

30. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

31. Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant

23

information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States' obligations not to contest the facts agreed to in this agreement.

32.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

33.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no

24

1  additional promise, understanding, or agreement may be entered into

2  unless in a writing signed by all parties or on the record in court.

3  <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4  34.  The parties agree that this agreement will be considered

5  part of the record of defendant's guilty plea hearing as if the

6  entire agreement had been read into the record of the proceeding.

7  AGREED AND ACCEPTED

8  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
9  CALIFORNIA

10  TRACY L. WILKISON
    Acting United States Attorney

11

12                                                  May 28, 2021

    SCOTT PAETTY                                    Date
13  BRIAN FAERSTEIN
    Assistant United States Attorneys

14

15

16  CHRISTOPHER FENTON
    Trial Attorney, DOJ Fraud Section

17                                                  5/25/21

18  ARMAN HAYRAPETYAN                               Date
    Defendant

19                                                  May 27, 2021

20  GILBERT TADMAZIAN                               Date
    Attorney for Defendant ARMAN
21  HAYRAPETYAN

22

23  <u>CERTIFICATION OF DEFENDANT</u>

24  This agreement has been read to me in Armenian, the language I

25  understand best.  I have had enough time to review and consider this

26  agreement, and I have carefully and thoroughly discussed every part

27  of it with my attorney.  I understand the terms of this agreement,

28  and I voluntarily agree to those terms.  I have discussed the

1   evidence with my attorney, and my attorney has advised me of my

2   rights, of possible pretrial motions that might be filed, of possible

3   defenses that might be asserted either prior to or at trial, of the

4   sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant

5   Sentencing Guidelines provisions, and of the consequences of entering

6   into this agreement.  No promises, inducements, or representations of

7   any kind have been made to me other than those contained in this

8   agreement.  No one has threatened or forced me in any way to enter

9   into this agreement.  I am satisfied with the representation of my

10  attorney in this matter, and I am pleading guilty because I am guilty

11  of the charge and wish to take advantage of the promises set forth in

12  this agreement, and not for any other reason.

13

14  _____          __5/ 25/ 21_____
    ARMAN HAYRAPETYAN                          Date
15  Defendant

16              CERTIFICATION OF INTERPRETER

17       I, ALEN DERPETROSSIAN am fluent in the written and spoken English

18  and Armenian languages.  I accurately translated this entire

19  agreement from English into Armenian to defendant ARMAN HAYRAPETYAN

20  on this date.

21

22  _____          __5/ 27, 2021_____
    INTERPRETER                                Date
23  Certificate number: 301094

24              CERTIFICATION OF DEFENDANT'S ATTORNEY

25       I am ARMAN HAYRAPETYAN's attorney.  I have carefully and

26  thoroughly discussed every part of this agreement with my client.

27  Further, I have fully advised my client of his rights, of possible

28  pretrial motions that might be filed, of possible defenses that might

                                    26

1   be asserted either prior to or at trial, of the sentencing factors

2   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

3   provisions, and of the consequences of entering into this agreement.

4   To my knowledge: no promises, inducements, or representations of any

5   kind have been made to my client other than those contained in this

6   agreement; no one has threatened or forced my client in any way to

7   enter into this agreement; my client's decision to enter into this

8   agreement is an informed and voluntary one; and the factual basis set

9   forth in this agreement is sufficient to support my client's entry of

10  a guilty plea pursuant to this agreement.

11

12  _____        May 27, 2021
    JILBERT TAHMAZIAN                   _____
                                        Date
13  Attorney for Defendant ARMAN
    HAYRAPETYAN

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28